New Bethlehem Borough Council, Appellant v. John McVay, Executor of the Estate of Susan McVay, Deceased, and Federal Development, Inc., Appellees.

Argued February 28, 1983, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*William R. Strong,* for appellant.

*Stuart S. Sacks, Smigel, Anderson & Sacks,* with him *James G. Arner,* for appellees.

OPINION BY JUDGE ROGERS, November 2, 1983:

The New Bethlehem Borough Council, acting for the borough, has appealed from an order of the Court of Common Pleas of Clarion County directing the borough to rezone a parcel of land because the borough zoning ordinance made insufficient provision for the use of land for multi-family dwellings.

The Clarion County Housing Authority applied for and received approval from the United States Housing and Urban Development Department, HUD, for a low cost housing project in New Bethlehem Borough. The New Bethlehem Borough Council agreed in writing with the county housing authority to make changes in the borough zoning regulations at and near the site necessary to accommodate the project. Borough council also adopted a resolution approving a loan from HUD for planning the project, in which council declared that there existed a need in the borough for low rent housing which was not being met by private enterprise. These events took place in 1979.

By the year 1981, the county housing authority with approval of HUD had chosen a developer for the project, Federal Development Inc. After considering a number of other sites in the borough, the housing authority and HUD chose as the location for the project a four and a half acre parcel of land owned

by the Estate of Susan McVay, deceased, of which John McVay is the executor. Federal Development Inc. entered into an agreement with the McVay estate for the purchase of the latter's land and John McVay, executor, and Federal Development Inc. are the appellees in this appeal.

The McVay parcel is located in an R-1 zoning district where the explicitly permitted residential use of land for residential purposes is limited to the creation and occupancy of single family detached dwellings and where so-called planned unit developments are allowed as a conditional use. The appellees applied to the borough council to rezone the McVay parcel from R-1 to R-2, in which latter district their proposal to erect eight buildings containing a total of forty dwelling units for rental to persons with low and moderate incomes was permitted. Borough council refused the application for rezoning. The appellees then submitted a challenge to the validity of the borough zoning ordinance to borough council, with a request for a curative amendment proposing that the McVay parcel be placed in the R-2 zoning district. Section 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §11004. Borough council held a hearing at which a thorough exploration of the factual issues were made, after which, without making findings of fact, conclusions or giving reasons for its action, it denied the challenge.

The estate and the developer appealed borough council's action to the Court of Common Pleas of Clarion County. As borough council had not made findings, the court made findings and concluded that the appellees, appellants below, had established that the borough by its zoning ordinance had, by permitting multi-family uses in the small R-2 district, failed

to provide its fair share of its land for development of multi-family dwellings and that the borough council had erred in denying the appellees' challenge. The relief ordered by the court was a direction to the borough to rezone the McVay parcel so as to place it in the R-2 zoning district. The court's opinion makes no mention of the borough's contention that the ordinance permitted multi-family projects as conditional uses in more than half of the borough.

The appellant borough advances nine questions but these essentially present three matters for decision. These are: (1) Did the court commit abuses of discretion or errors of law in concluding on this record that the borough had failed to provide its fair share of land for multi-family dwelling uses? (2) Did the court commit an error of law by ignoring and thereby failing to accept the borough's contention that this project was permitted as a conditional use in more than half of the land area of the borough including the R-1 zone in which the McVay parcel is located? (3) Did the court err with respect to the relief given?

The appropriate answers to these questions we believe are: (1) the court did not err in concluding that the allowance of multi-family uses only in the small R-2 zoning district did not meet the borough's duty to provide its fair share of land for multi-family housing; (2) that the court erred in ignoring the ordinance's allowance of planned unit developments as conditional uses in fifty percent of the land area of the borough, and thereupon failing to conclude that this provision did fulfill the borough's duty to provide its fair share of land for multi-family housing; and (3) that the court erred with respect to the provision of relief but as we must reverse the order below, no action by us is required in this respect.

While the particular point presented for decision in the case of *Fernley v. The Board of Supervisors of Schuylkill Township*, Pa. Commonwealth Ct. , 464 A.2d 587 (1983) was that of whether the fair share analysis for deciding exclusionary zoning case is applicable where the exclusion of a particular use is total, as distinguished from partial, Judge CRAIG's collection, description and analysis of the authorities in the area are pertinent to this partial exclusion case; but are not required to be repeated here. In *Fernley* we held that the fair share analysis was meant also to be applied in cases where the exclusion is total. The instant case is one of partial exclusion as to which there was no doubt earlier that the fair share analysis applies. Indeed, *Surrick v. Zoning Hearing Board of Upper Province Township*, 476 Pa. 182, 382 A.2d 105 (1977) was a case of partial exclusion. *See also In re Appeal of Herman Silver*, 35 Pa. Commonwealth Ct. 569, 387 A.2d 169 (1978); *In re Appeal of Abcon, Inc.*, 35 Pa. Commonwealth Ct. 589, 387 A.2d 1303 (1978).

The first inquiry in the fair share analysis is that of whether the community in question is a logical area for development and population. The appellant borough would confine the inquiry to the area within the borough's boundaries. The hearing court correctly based its decision on the wider community. In *Surrick*, Justice NIX on this point writes that the "region's population growth" figures, not the community's alone, are factors to be considered. The court in the instant case found, based on record evidence, that Clarion County and the townships surrounding New Bethlehem Borough had experienced substantial population increases and correctly concluded that the borough was located in a logical area for development and population.

*Surrick* next suggests consideration of the municipality's population density data, its percentage of total undeveloped land and the percentage of its land available for the development of multi-family dwellings. The borough proved that in the last two decades it has lost about one hundred and fifty persons. The project here proposed would accommodate about the same number of persons. Further, both the Comprehensive Plan prepared in 1970 and the council resolution adopted in 1979 express borough council's view that the municipality needed additional multi-family housing. The statistical material in the record sufficiently demonstrates that there is land available for multi-family development.

The last step in the *Surrick* analysis is that of determining whether the zoning scheme in the past effected an exclusion or whether there was exclusionary intent. The hearing judge found on substantial evidence that a total of 288 of the approximately 311 acres of land in the borough was suitable for development and that the R-2 zoning district where multi-family dwellings were permitted only in a zoning district (R-2) containing 2.7 percent of the developable land in the borough. These statistics, conjoined with council's refusal to rezone to accommodate this project after having first agreed to do so, would be sufficient to show an intent to zone out this multi-family project as the trial court decided.

Hence, assuming as the court seems to have done, that multi-family projects could be located only in the R-2 district, the substantive validity of the ordinance was successfully challenged.

We pass now, however, to the question of whether the provisions of the ordinance permitting planned unit developments as conditional uses provide the borough's fair share of multi-family dwellings.

Planned unit developments are allowed as conditional uses in the R-1 and R-2 Residential and the 303 B Commercial districts, comprising more than one-half of the borough's land area. The provisions of the ordinance pertinent are the following:

## ARTICLE 8—DEFINITIONS

. . . .

*Conditional Use:* The Term "Conditional Use" shall mean a "Special Exception"

. . . .

*Special Exception (Conditional Use):* A modification of the regulation of the Zoning Ordinance which the Zoning Hearing Board is permitted to authorize in specific instances listed in this Ordinance, under the terms, procedures and conditions prescribed herein.

. . . .

## ARTICLE 2—ZONING MAP, DISTRICTS AND BOUNDARIES

. . . .

*408 PLANNED UNIT DEVELOPMENT:* The Zoning Hearing Board may permit departures from the zoning regulations for any planned unit development in the manner herein provided for conditional uses, if the planned project meets the following requirements:

*408.1* The area of land to be developed is not less than two (2) acres.

*408.2* Adjacent properties will not be adversely affected.

*408.3* The plan shall be consistent with the intent and purpose of this Ordinance.

*408.4* A complete plan for the area is submitted for review and approval by the Borough Planning Commission and Borough Council to determine if the proposed project is consistent with the Comprehensive Plan.

*408.5* A minimum of one (1) acre per one hundred (100) dwelling units shall be reserved for recreational use, with no such recreation area to be less than one (1) acre.

*408.6* For purposes of this section any Urban Renewal Plan approved by the Planning Commission and adopted by the Borough shall be considered a Planned Unit Development.

. . . .

ARTICLE 6—ZONING HEARING BOARD
*604 CONDITIONAL USES (SPECIAL EXCEPTIONS):* The Zoning Hearing Board shall have the power to decide applications for conditional uses as specified in this Ordinance, in harmony with its general purpose and intent and in accordance with the standards set forth. The Board shall approve a conditional use only if it meets the following standards and criteria:

*604.1* The use is compatible with adjacent uses and structures.

*604.2* The use is suited to the topography and other characteristics of the site.

*604.3* The use complies with all off-street parking and other provisions of this Ordinance. In interpreting and applying the provisions of this Ordinance, they shall be held to be the minimum requirements for the health, safety and general welfare of the Borough.

The phrase "conditional use" as used in the New Bethlehem Borough ordinance is defined as meaning "special exception"; hence, planned unit developments are permitted by special exception—that is, upon approval by the zoning hearing board.

A zoning ordinance may be held to satisfy the municipality's fair share of a required use by making the use available by conditional use or special exception. *Russell v. Penn Township Planning Commission*, 22 Pa. Commonwealth Ct. 198, 348 A.2d 499 (1975); *Zajac v. Zoning Hearing Board of Mifflin Township*, 41 Pa. Commonwealth Ct. 7, 398 A.2d 244 (1979). *See* Ryan, Pennsylvania Zoning Law and Practice, §3.5.5. However, an ordinance which allows a required use by conditional use or special exception is not vaild if such provision amounts to a token only. Of course, the allowance of more than half of the land area of the municipality, as New Bethlehem says it has made available for multi-family uses by special exception, is not a mere token. Although the planned unit development provisions of the New Bethlehem zoning ordinance presented to us as allowing multi-family housing by special exception do not ineludibly so ordain, the burden of persuading the tribunal that these provisions are illusory only and that the ordinance excluded multi-family use was on the appellees—the McVay estate and the developer. *Beaver Gas Co. v. Osborne Borough*, 445 Pa. 571, 285 A.2d 501 (1971). We believe that the appellees failed to carry this burden in respect to these provisions of the ordinance. Indeed, the appellees, as we have already noted, and as we are about again to note, have invoked these provisions by application now, we understand, pending with the zoning hearing board.

Since proceedings for the grant of a special exception have been commenced by the appellees, we point out to the New Bethlehem Borough authorities some principles of law. A use allowed by special exception—in this case multi-family dwellings—is a permitted use which must be granted if the standards and criteria of the ordinance for such use are met, unless the use will result in substantial harm to the public interest. Harm to the public interest to be disqualifying must exceed that which might be expected normally to attend the use permitted. *Brentwood Borough v. Cooper,* 60 Pa. Commonwealth Ct. 462, 431 A.2d 1177 (1981). We especially emphasize the holdings in the case of *Bray v. Zoning Board of Adjustment,* 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980), that the burden of persuasion as to the compliance with specific criteria and standards of the ordinance is on the applicant; and that the burden of persuasion that the proposed use will have more than expected detrimental effects or will offend nonspecific requirements stated in the ordinance is upon those opposing the application.

Having concluded that the New Bethlehem Borough zoning ordinance is not unconstitutional for failure to provide a fair share of land for multi-family use because such use is permitted by special exception in a large area of the borough, we must reverse the order of the trial court.

Since we are reversing, it is unnecessary to take up the matter of the relief allowed by the court's order.

Order reversed.

ORDER

AND Now, this 2nd day of November, 1983, the order of the Court of Common Pleas of Clarion County dated August 31, 1982 is reversed.